**In re Jack Richard SIMPSON.**

No. 03–1530.

United States Court of Appeals, Federal Circuit.

DECIDED: June 9, 2004.

Larry L. Coats, Principal Attorney, Coats & Bennett, Cary, NC, for Appellant.

John M. Whealan, Principal Attorney, William G. Jenks, of Counsel, Arlington,

VA, James P. Walsh, of Counsel, San Francisco, CA, for Appellee.

Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judge.

PROST, Circuit Judge.

Jack Simpson appeals the decision of the Board of Patent Appeals and Interferences ("Board") affirming the examiner's decision to reject claims 1–4, 6, 15–17, 19, 21, 24, 26, and 28 as anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 5,161,-442 to Rilitz ("Rilitz"). Because substantial evidence supports the Board's conclusion that Rilitz anticipates independent claims 1 and 15 and the associated dependent claims, we *affirm*.

I

The invention at issue relates to "rotary cutting dies for cutting corrugated board and the stripping of scrap therefrom, and more particularly to a resilient stripping member for efficiently separating scrap material from an associated product blank and effectively controlling the exit trajectory of the scrap from the cutting die apparatus." Representative claim 1 reads:

1. A rotary cutting die for cooperating with a rotary anvil to cut corrugated board, comprising:

(a) a base;

(b) at least one scrap cutting blade secured to the base of the cutting die for cutting a piece of scrap from a sheet of corrugated board that is directed through a nip defined between the cutting die and the anvil;

(c) at least one scrap stripper mounted to the base adjacent the blade for stripping a cut scrap piece from the blade and for urging the cut scrap piece against the anvil as the cut scrap piece exits the nip;

(d) the at least one scrap stripper being constructed of a resilient material and including a base, a flexible finger integral with the case and extending outwardly therefrom at an angle, and an open area defined between the base and the flexible finger; and

(e) wherein the flexible finger is movable between a retracted position where it lies adjacent the base and an extended position from where at least a portion of the finger is separated from the base.

The examiner issued various rejections of the claims, which Simpson appealed to the Board. As a general matter, the Board reversed the examiner on the rejections issued under 35 U.S.C. § 102(e), a majority of the rejections issued under 35 U.S.C. § 103(a), and some of the rejections issued under 35 U.S.C. § 112, paragraph 2. The Board, however, affirmed the examiner's rejection of claims 8–10, 14, and 28 under § 112, second paragraph, and claims 5, 7, 18, and 20 under § 103(a) as unpatentable over Rilitz. In addition, the Board affirmed the examiner's rejection of claims 1–4, 6, 15–17, 19, 21, 24, 26, and 28 under § 102(b) as anticipated by Rilitz. On appeal, Simpson challenges only the Board's affirmance regarding anticipation.

In finding that Rilitz anticipated independent claims 1 and 15, the Board agreed with the examiner that Rilitz disclosed the various structural elements claimed by Simpson. It also noted that these structural elements presumptively disclose the functional limitations under principles of inherency, and that Simpson did not rebut this presumption. Consequently, the Board sustained the examiner's rejection of independent claims 1 and 15 under § 102(b) as anticipated by Rilitz. It also sustained the examiner's rejection of the

related dependent claims, whose rejection Simpson did not specifically challenge.

## II

Anticipation is a question of fact that we review for substantial evidence. *In re Hyatt,* 211 F.3d 1367 (Fed.Cir.2000). "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber,* 128 F.3d 1473, 1477 (Fed.Cir.1997). In addition, claim limitations may be written in either structural or functional terms. *Id.* at 1478. Thus, we must determine whether substantial evidence supports the Board's factual finding that Rilitz discloses, either explicitly or inherently, every claimed limitation, both structural and functional, in independent claims 1 and 15.

On appeal, Simpson first argues that Rilitz does not anticipate the relevant claims because Rilitz does not disclose a "cutting die" that cuts out and removes scrap. Instead, according to Simpson, Rilitz discloses a machine for cutting material into individual pieces. Second, Simpson contends that Rilitz does not disclose an anvil, which both the preamble and body of claim 1 require. Third, Simpson argues that Rilitz discloses neither a "scrap cutting blade" nor a "scrap stripper"; these functional limitations do not read on the knife 8 and guide 13 of Rilitz because these structures do not inherently cut or trim scrap, respectively.

The appellee, the United States Patent and Trademark Office ("PTO"), counters that substantial evidence supports the Board's finding that Rilitz anticipates Simpson's claimed rotary cutting die. According to the PTO, Rilitz discloses every claimed structural limitation. Moreover, the PTO contends, *Schreiber* entitles the Board to presume that this identical structure is inherently capable of performing the claimed functions. 128 F.3d at 1478. The PTO also argues that, even without this presumption, both the Board and the examiner made sufficient factual findings that Rilitz is capable of performing all the claimed functions. Thus, according to the PTO, because Simpson has been unable to rebut either the presumption or facts demonstrating inherency, we should affirm the anticipation rejection of the disputed claims. As a corollary, the PTO notes that because claim 15 is broader than claim 1— it does not require an anvil—it is also unpatentable.

We agree with the Board that Rilitz explicitly discloses each of the claimed structural limitations. Simpson claims three structural elements: (1) a base; (2) a blade (secured to the base); and (3) a stripper (mounted to the base adjacent the blade) made of resilient material and including a base and integral flexible finger. The Board found that Rilitz discloses each of these structural limitations, although using different terminology. In particular, the Board agreed with the examiner that Rilitz discloses (1) a clamping device 7; (2) a knife 8; and (3) a guide 13. The guide 13 has both a base and a lip-shaped deflector. *See* Rilitz, col. 3, ll. 28–37; Rilitz, Fig. 2. Moreover, it is made of "rubber or another suitable elastomeric material." Rilitz, col. 3, l. 4. We conclude that the Board correctly found, on the basis of substantial evidence, that each of the structural elements claimed by Simpson corresponds to, respectively, the structural elements disclosed in Rilitz.

Further, there is substantial evidence to support the conclusion that the structure recited in Rilitz inherently performs the functional limitations claimed by Simpson. On appeal, Simpson primarily argues that the claimed functional limitations distinguish his invention from Rilitz. Particularly, Simpson contends that Rilitz does

not teach a die cutter for cutting and removing "scrap" by urging it against the anvil. But

> where the Patent Office has reason to believe that a functional limitation asserted to be critical for establishing novelty in the claimed subject matter may, in fact, be an inherent characteristic of the prior art, it possesses the authority to require the applicant to prove that the subject matter shown to be in the prior art does not possess the characteristic relied on.

*Schreiber,* 128 F.3d at 1478 (quoting *In re Swinehart,* 58 C.C.P.A. 1027, 439 F.2d 210, 213 (C.C.P.A.1971)). As in *Schreiber,* the existence of the same structural elements in Rilitz gave both the examiner and the Board a reason to believe that these elements could perform the same functions claimed by Simpson. The burden therefore shifted to Simpson to disprove inherency. *Id.* We agree with the Board that Simpson did not demonstrate that such structure "did not inherently possess the functionally defined limitations of his claimed apparatus." *Id.*

We also agree with the PTO that, beyond the presumption, the examiner specifically found, and the Board affirmed, that Rilitz is capable of performing each functional limitation claimed by Simpson. With respect to the "scrap cutting" limitation, the examiner specifically found that, depending on the stock used, the knife 8 would cut both the stock material as well as the scrap. In addition, the examiner found that Rilitz's guide 13 "urg[es] the cut scrap against the against the other stripper (14)[,] which is located on the anvil cylinder (1a)." Thus, the examiner properly deduced that, in the absence of a scrap stripper on the other cylinder, the guide 13 was capable of "urging the cut scrap piece against the anvil" itself. Similarly, the examiner also found that Rilitz's

guide 13 was capable of "stripping the cut scrap piece" because it "disengag[es] the cut web from the respective dies." The Board affirmed these findings by the examiner.

We reject Simpson's other arguments that the Board's decision is wrong as a matter of law and not supported by substantial evidence. First, with respect to Simpson's argument that the Board failed to sufficiently construe the claims and therefore fails under *Gechter v. Davidson,* 116 F.3d 1454 (Fed.Cir.1997), we agree with the PTO that the Board sufficiently construed the claims. Simpson's primary dispute relates to whether Rilitz disclosed the claimed functional limitations. By dividing the claims into their structural and functional components, the Board, in accordance with law, specifically addressed the contested limitations of each claim. *See id.* at 1460; *see also Hyatt,* 211 F.3d at 1371 ("The central thrust of *Gechter* is that the Board must explain the basis for its rulings sufficiently to enable meaningful judicial review."). Second, the Board did not, as Simpson argues, ignore material claim limitations—the anvil, cutting die, and scrap stripper. As the PTO points out, Simpson does not actually claim an anvil or cutting die; these elements only appear in the preamble, not in the claims themselves. Moreover, specifically as to the cutting die, the PTO correctly points out that Simpson's claims broadly cover "at least one scrap cutting blade," which would necessarily exclude Simpson's proffered definition of a cutting die as comprising at least two blades. With respect to Simpson's arguments regarding the lack of a scrap stripper, our inherency analysis above addresses why the Board properly presumed that the guides disclosed in Rilitz inherently performed the function of stripping scrap. Finally, we reject Simpson's contention that the Board's analysis fails because it only found the

structural components in Rilitz inherently "capable" of performing the functions claimed by Simpson. Simpson's proposed standards for finding inherency are incorrect given that the court in *Schreiber* explicitly affirmed the Board's inherency decision based on capability. 128 F.3d at 1478 ("the top disclosed in figure 5 of the Harz patent 'is *capable* of functioning to dispense kernels of popped popcorn in the manner set forth in claim 1'" (emphasis added)).

We sustain, as did the Board, the rejection of dependent claims 2–4, 6, 16, 17, 19, 21, 24, 26, and 28 as being anticipated by Rilitz. Simpson did not specifically challenge the rejection of these claims, therefore they fall with parent claims 1 and 15. *See In re Nielson*, 816 F.2d 1567, 1572 (Fed.Cir.1987).

For the reasons given above, the Board's decision is affirmed.